UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA A., <br>     Plaintiff, <br> v. <br> NANCY A. BERRYHILL, <br>     Defendant. | Case No. 18-cv-04803-NC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REMANDING FOR PAYMENT OF BENEFITS** <br><br> Re: Dkt. Nos. 18, 23 |

Plaintiff Christina A. seeks judicial review of the Commissioner of Social Security Nancy A. Berryhill's denial of her application for disability benefits under the Social Security Act. *See* Dkt. No. 18. Plaintiff argues that the Administrative Law Judge ("ALJ") failed to properly apply res judicata by finding that she had not rebutted the presumption of nondisability, and failed to properly reject medical opinions and witness testimony. The Court finds that the ALJ erred in weighing medical opinions and in discounting Christina A.'s and her daughter's testimony. Accordingly, the Court GRANTS Christina A.'s motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. The Court REVERSES the decision of the ALJ and remands for payment of benefits beginning at the alleged onset date.

## I. Background

### A. Christina A.

Christina A. experiences musculoskeletal pain, depression, anxiety, and panic disorder including daily panic attacks. AR 765. These impairments were caused in part by an accident in 2010 involving the metal door of a garbage compactor at her apartment complex falling on her. AR 765. Christina A. was born in 1968 and completed eighth grade but did not obtain a GED. AR 225, 244. She lives with her daughter and two grandchildren. AR 48.

### B. Procedural History

Christina A. filed a social security disability claim on June 9, 2010, alleging disability beginning August 10, 2009. AR 72–86. An ALJ denied this claim on December 6, 2012. *Id*. The Appeals Council denied Christina A.'s request for review on June 11, 2014, and Christina A. did not appeal this finding. *Id*.

Christina A. filed a new claim on July 21, 2014, alleging disability beginning June 2, 2013. AR 225–233. An ALJ denied this application on July 6, 2017. TR 14–16. The Appeals Council denied Christina A.'s request for review of the ALJ's decision on June 28, 2018. AR 1–5. Christina A. now seeks judicial review of this ALJ's decision. *See* 42 U.S.C. §§ 405(g) and 1383(c). Both parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). *See* Dkt. Nos. 8, 12.

### C. Undisputed Facts

The parties submitted separate statements of the administrative record because they were unable to agree on a joint statement under the Court's Procedural Order for Social Security Review Actions. Dkt. Nos. 7, 18, 19. The Commissioner does not dispute the facts presented by Christina A., but provides additional facts for a more complete reproduction of the record. Dkt. No. 19.

#### 1. Medical Evidence

##### a. Musculoskeletal Pain

Christina A. had surgery on her right shoulder in August 2014 following a partial

2

rotator cuff tear in June 2013. AR 122. This somewhat improved her shoulder but Christina A. still had limited range of motion, abnormal gait, and tenderness. *Id.* She avoided exercise due to the pain for two years. AR 1334. She had conflicts with her treating physician over noncompliance with pain medication. AR 1568, 1578. Her pain reduced by 50% between August and November 2015 and she was able to go swimming. AR 1352, 1364. Christina A. repeatedly reported concerns about reduction in her pain medication and once ran out of pain medication due to taking more than prescribed. AR 1230, 1232, 1376, 1394. She also experienced neck and low back pain which were not helped by injections or physical therapy. AR 1209.

### b. Anxiety and Depression

Christina A. became anxious and depressed in 2010. AR 765. She reported phobias and suicidal thoughts. AT 1161. She had panic attacks. AR 766. She had low intellectual functioning. AR 767, 1159.

### c. Doctors' Opinions

Three treatment providers submitted opinion evidence for Christina A.'s ALJ hearing: Genevieve Monks, Psy. D.; Barbara Saint Clair, MFT; Cynthia Pena, M.D.; and Tamara Lee, MSN, APRN.

#### i. Dr. Monks

Dr. Monks provided a comprehensive psychiatric evaluation of Christina A. in January 2015. AR 765–770. She diagnosed Christina A. with mild major depressive disorder and panic disorder, and reported that Christina A. reported daily panic attacks that she treated with lorazepam and counseling. AR 760. Dr. Monks opined that Christina A. was poor at sustaining an ordinary routine without special supervision, completing a normal workday or week without interruptions, interacting with coworkers, and dealing with changes in the work setting. AR 770. Dr. Monks opined that there was a high likelihood of Christina A. emotionally deteriorating in a work environment. *Id.*

#### ii. MFT Saint Clair

MFT Saint Clair had thirty bi-weekly sessions with Christina A. between March

2015 and May 2016. AR 1159. She diagnosed Christina A. with recurrent moderate major depressive disorder and unspecified anxiety disorder with panic attacks. AR 1159, 1181. She reported moderately impaired judgment, phobias, suicidal thoughts, and inability to take care of herself. AR 1161. She opined that Christina A. had a substantial loss in the abilities to: understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; make judgments that are commensurate with the functions of unskilled work; and deal with changes in a routine work setting. AR 1184–1185.

### iii. Dr. Pena and MSN Lee

Dr. Pena, Christina A.'s treating physician, and MSN Lee, Christina A.'s treating nurse practitioner, opined that Christina A. had severe limitations in: maintaining attention and concentration for extended periods; performing activities within a schedule and maintaining regular punctual attendance; and completing a normal workday and workweek at a consistent pace without interruptions. TR 1585. They opined that the onset of these limitations was November 2010. *Id.*

### iv. State Agency Experts

Four state agency experts reviewed Christina A.'s records: B. Vaghaiwalla, M.D.; Robert Liss, Ph.D; Beverly Morgan, M.D.; and Harvey Bilik, Psy. D. Dr. Vaghaiwalla opined that the records showed no significant change since the December 2012 denial of benefits. AR 107. Dr. Liss opined that Dr. Monks's opinion overestimated the severity of Christina A.'s symptoms. AR 109. Dr. Liss opined that Christina A. could maintain memory and concentration for simple tasks over a workweek, adapting to ordinary workplace change. AR 108. Dr. Morgan opined that the new evidence did not provide a basis for changing any earlier assessment. AR 119. Dr. Morgan also noted Christina A.'s history of right shoulder surgery leading to some pain improvement. AR 122. Bilik, Psy.D., opined that the evidence did not show worsening symptoms. AR 119. Bilik also found that Dr. Monks's opinion overestimated the severity of Christina A.'s symptoms. *Id.* Dr. Bilik opined that Christina A. could carry out both simple and detailed instructions

4

1 but would benefit from reduced interaction with the public. AR 124–125.

## 2. ALJ Hearing

At the ALJ hearing on February 22, 2017, Christina A. and a vocational expert testified. TR 43–70. Christina A.'s daughter, Jessica A., completed a "Function Report" at the Commissioner's request. TR 269–277.

### a. Christina A.'s Testimony

Christina A. testified that she lived with her daughter and two grandchildren. AR 48. She had not provided childcare for the last two and a half years. AR 50. She could not drive due to difficulty concentrating and pain in her neck and back. AR 48. This pain began when a door fell on her in 2010. AR 49. She was not responsible for any housework. AR 51. Her daughter shopped, cooked, and cleaned. AR 51–52. Christina A. rarely left her room, even eating dinner alone while lying in her bed, and only sitting in the living room infrequently. AR 53–56.

### b. The Vocational Expert's Testimony

The vocational expert testified that a hypothetical individual of Christina A.'s age, education, and work background could perform light work, but never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could frequently handle, finger, and feel; and could perform simple, routine tasks with only occasional public contact. AR 66–67. The VE testified that this individual could work as a hand packer, garment sorter, or cleaner. AR 67. The VE testified that the same individual with the added limitation of restriction to sedentary work could work as a sorter, weight tester, or table worker. AR 68. The VE testified that no work is available for the same individual with the added limitation of inability to work for 20% of the day. AR 68.

### c. Jessica A.'s Testimony

Jessica A., Christina A.'s daughter, completed a report in December 2014. TR 269. She wrote that Christina A. has difficulty with "anxiety, focusing, concentrating, weakness, and pain." AR 269. She reported that Christina A. does no household chores, yard work, or caring for other people. AR 270. She reported that Christina A. cannot sit

up very long or pay attention very long. AR 273–274.

### 3. ALJ's Decision

To qualify for disability benefits under the Social Security Act, a claimant alleging disability must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 48 U.S.C. § 1382c(a)(3)(A). An ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(1). If the ALJ finds the claimant disabled or not disabled at one of the steps, the ALJ makes her determination and does not proceed in her evaluation. 20 C.F.R. § 416.920(a)(4).

At step one, the ALJ determines whether the claimant engaged in any substantial gainful activity since applying for disability under 20 C.F.R. 404.1520(b). At step two, the ALJ determines whether the claimant suffers from any severe impairments under 20 C.F.R. 404.1520(c). At step three, the ALJ determines whether the claimant has an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404(P), Appendix 1. Next, the ALJ determines the claimant's residual functional capacity (RFC). The RFC is an individual's ability to do physical and mental work activities on a sustained basis despite limitations from impairments, including impairments that are not severe. 20 C.F.R. 414.1520(e); 404.1545. At step four, the ALJ determines if the claimant has the RFC to perform any of his or her past work under 20 C.F.R. 404.1520(f). Finally, at step five, the ALJ determines whether the claimant is able to do any other work considering his or her RFC, age, education, and work experience. 20 C.F.R. 404.1520(g).

#### a. Steps 1–3

At step one, the ALJ found that Christina A. did not engage in any substantial gainful activity since July 21, 2014, the application date. AR 19.

At step two, the ALJ found that Christina A. had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of

6

the right shoulder, status post right fractured fibula, depression, and anxiety disorder. AR 20.

At step three, the ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. AR 20.

### b. Residual Functional Capacity

Before proceeding to step four and five, an ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.945(a)(4)(iv). To determine RFC, an ALJ considers all of the claimant's severe impairments collectively. *Id.* § 416.945(a)(2).

Here, the ALJ found that Christina A. had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) except that she cannot climb ladders, ropes and scaffolds, can perform occasional posturals, can frequently handle, finger and feel and is limited to simple routine tasks with occasional public contact. AR 21.

### c. Steps 4–5

At step four, the ALJ found that Christina A. had no past relevant work. AR 25. At step five, the ALJ found that Christina A. could perform jobs that exist in significant numbers in the national economy based on her age, education, work experience, and RFC. AR 25.

## II. Legal Standard

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). Even when the ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

## III. Discussion

### A. The ALJ Misapplied Res Judicata

The doctrine of res judicata applies to administrative decisions, though less rigidly than to judicial proceedings. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). When a claimant's disability claim is denied and she brings a new claim, she must overcome a presumption of continuing nondisability by proving changed circumstances indicating a greater disability. *Id.* Changed circumstances can include increased severity of impairments, changed age category, new impairment not previously considered, or a change in the criteria for determining disability. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); Acquiescence Ruling 97-4(9). Application of res judicata is inappropriate where the claimant was not represented by counsel at the time of the prior claim. *Id.*

Here, the ALJ applied res judicata, stating that "a presumption of continuing disability is applied" and "[i]n order to overcome the presumption of continuing non-disability, the claimant must prove changed circumstances indicating a greater disability." AR 17. Ultimately, the ALJ found that Christina A. did not rebut this presumption. *Id.*

Application of res judicata was inappropriate in this case for two reasons. First, Christina A. was not represented by counsel at her prior hearing. The ALJ decision from Christina A.'s 2012 hearing indicated that "Debbie Leigh-Mingo, a non-attorney representative, represents the client." AR 75. Second, criteria for determining Christina

8

A.'s disabilities changed between the two proceedings. The first ALJ's determination was decided in 2012. *Id*. In January 2017, the Commissioner issued the "Revised Medical Criteria for Evaluating Mental Disorders." 81 Fed. Reg. 66138 (September 26, 2016), which instructed federal courts to "use these final rules on and after their effective date, in any case in which we make a determination or decision." *Id*. at n.1. The instant appeal is based on an ALJ decision rendered on July 6, 2017. AR 26.

However, the Court finds that this error is harmless. Had the ALJ relied substantially on the previous ALJ's opinion without making renewed disability determinations based on a comprehensive review of the record, this error would be more significant. Here, though, the ALJ made findings of disability based on Christina A.'s medical records and witness testimony. She came to new conclusions independent of the prior decision. AR 22–23. Because "the ALJ also conducted a thorough review of the medical records and testimony to make an independent nondisability finding," the misapplication of res judicata was harmless. *Plummer v. Berryhill*, 747 Fed. Appx. 631, 632 (9th Cir. 2019); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### B. The ALJ Improperly Weighed the Medical Evidence

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Ninth Circuit precedent distinguishes three types of physician opinions: (1) those written by physicians who treat the claimant (treating physicians); (2) those written by physicians who only examine the claimant (examining physicians); and (3) those written by physicians who neither treat nor examine the claimant (non-examining physicians). *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, a treating physician's opinion carries greater weight than that of an examining physician, and an examining physician's opinion carries greater weight than that of a non-examining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2011). An ALJ must provide "clear and convincing reasons that are supported by substantial evidence" to reject uncontradicted opinions of a treating or examining doctor. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

9

1198 (9th Cir. 2008) (quoting *Bayliss*, 427 F.3d at 1216). Contradicted opinions of a treating or examining doctor may be rejected by "specific and legitimate reasons that are supported by substantial evidence." *Id.* The ALJ must "give good reasons" for its decision as to the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

The ALJ gave "little weight" to the opinions of Dr. Pena and MFT Saint Clair, "partial weight" to the opinion of Dr. Monks, and "great weight" to the findings of the state agency experts. AR 24–25. The Court finds that the ALJ provided appropriate reasons to give little weight to Dr. Pena's opinion and great weight to the state agency experts. The ALJ erred in weighing the opinions of Dr. Monks and MFT Saint Clair.

If an ALJ improperly rejects medical opinion evidence, that evidence is credited as true as a matter of law. *Lester*, 81 F.3d 821 at 834.

### 1. Dr. Pena

Dr. Pena was Christina A.'s treating physician and her opinion was contradicted by the state agency experts, so her opinion should be afforded the highest weight and may only be rejected with "specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198. The ALJ gave Dr. Pena's opinion little weight because it was "overly restrictive and inconsistent with the treatment record," noting Christina A.'s mild MRI findings, normal electromyography neuromuscular testing, mildly abnormal gate, and helpful injections. AR 24. These reasons are specific, legitimate, and supported.

### 2. Dr. Monks

Dr. Monks was an examining physician whose opinion was contradicted by the state agency experts, so discounting this opinion also required "specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198. The ALJ provided similar reasons for giving partial weight to Dr. Monks's opinion, calling the assessment "overly restrictive" and "inconsistent with treatment records." AR 25. Dr. Monks diagnosed Christina A. with "panic disorder and mild major depressive disorder" and opined that Christina A. therefore had a "poor ability to sustain a routine and complete

10

a normal workday and week, deal with coworkers and adapt to changes." AR 24. The ALJ discounted this opinion because of "exam findings showing normal exam but for depressed and anxious mood and limited recent memory and fund of knowledge." AR 25. Indeed, those findings were precisely the grounds for Dr. Monks's opinion. The Court struggles to understand why the ALJ discounted Dr. Monks's opinion on the same bases that Dr. Monks rendered it. A normal exam *but for* depression and anxiety is at least theoretically consistent with the finding of disability due to the impairments of depression and anxiety. This reason is not legitimate. Therefore, Dr. Monks's opinion is credited as true as a matter of law.

### 3. MFT Saint Clair

MFT Saint Clair is not an acceptable medical source because she is a marriage and family therapist and not a medical doctor, so 20 C.F.R. § 416.927(f) governs consideration of her opinion. One factor that the ALJ may consider in assessing such an opinion is the length of the treatment relationship. 20 C.F.R. § 416.927(c)(1)-(6). The ALJ may discount an opinion like MFT Saint Clair's with "specific, germane reasons." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). The ALJ discounted MFT Saint Clair's opinion in part because she "had only be[en] treating [Christina A.] for a couple of months before rendering these assessments . . . the treatment history is quite brief." AR 24. This is inaccurate. MFT Saint Clair provided an assessment in May 2016, after 30 bi-weekly sessions with Christina A. beginning in March 2015. AR 1159. This is not a germane reason to discount MFT Saint Clair's testimony.

### 4. State Experts

The state agency experts were all non-examining. The ALJ afforded these opinions "great weight" because they "reviewed a sizeable portion of the medical evidence in rendering their assessments, they cited specific medical findings to support their determinations and have a thorough understanding of the Administration's disability programs and evidentiary requirements." AR 25. These are appropriate reasons to give great weight to these assessments. 20 C.F.R. § 404.1527(c)(2).

11

**C. The ALJ Improperly Discounted Christina A.'s Testimony**

When assessing a disability claimant's testimony regarding the subjective intensity of symptoms, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first "determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). If the claimant has presented evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must give "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of his symptoms. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks omitted). Even if the claimant's testimony suggests he may have some difficulty functioning, it can still "be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citing *Turner v. Comm'r of Soc. Sec.*, 513 F.3d 1217, 1225 (9th Cir. 2012)). Where an ALJ improperly rejects the claimant's testimony regarding his or her own limitations, and the claimant would be disabled if credited, that testimony is credited as true as a matter of law. *Varney v. Secretary of Health and Human Srvcs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

Here, the ALJ found that Christina A.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 23. The ALJ made no subsequent finding of malingering. *Id.* Thus, the ALJ was required to make specific, clear, and convincing findings to support a rejection of Christina A.'s testimony. *Burrell*,

12

1    775 F.3d at 1136.

2    The ALJ found that Christina A.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." AR 23. She noted that "medications have been relatively effective in controlling the claimant's symptoms" but did not specify which medications, which symptoms, or which impairments. The ALJ failed to identify what testimony she found not to be credible and failed to explain exactly what evidence undermined that testimony. *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001). The ALJ also found that the records did not "fully corroborate" Christina A.'s allegations of "staying at home in her bedroom" without pointing to any particular records contradicting that allegation. AR 23. Finally, the ALJ questioned whether Christina A.'s unemployment was "actually due to medical impairments" because Christina A. "worked only sporadically prior to the alleged disability onset date." *Id*. This observation does not go to rebut any of Christina A.'s specific testimony.

The ALJ's reasons for discounting Christina A.'s testimony were not specific, clear, and convincing. Therefore, her testimony is credited as true as a matter of law.

### D. The ALJ Failed to Consider Jessica A.'s Testimony

To reject the opinion of a lay witness, the ALJ must provide specific reasons that are germane to that witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Lay witness testimony "cannot be disregarded without comment." *Id*.

Jessica A., Christina A.'s daughter, provided written testimony. TR 269–277. The ALJ made no reference to Jessica's testimony anywhere in her opinion. The Commissioner argues that this error was harmless because Jessica's testimony mirrored Christina A.'s own allegations. Dkt. No. 20 at 9 (citing *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (finding failure to discuss family members' statements harmless because they did not describe any limitations beyond those that the claimant had already described)). Indeed, even Christina A. acknowledges that her "daughter's report generally is consistent with Christina A.'s own reports and testimony." Dkt. No. 18 (Plaintiff's

13

1  Separate Statement of the Administrative Record) at 12.  But this fact is only relevant if
2  "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally
3  well to the lay witness testimony." *Molina*, 674 F.3d at 1117.  Here, the Court has found
4  above that the ALJ did not give specific, clear, convincing reasons for discounting
5  Christina A.'s testimony.  Even if the reasons had been specific, clear, and convincing, it is
6  not obvious that the same reasons would necessarily apply to discounting Jessica's
7  testimony.  Therefore the ALJ erred in disregarding Jessica's testimony.

**E. The Errors Were Not Harmless Because Christina A. Was Prejudiced**

The harmless error standard applies to social security cases. *Molina*, 674 F.3d at 1114.  An ALJ's error is harmless when the Court can conclude from the record that, absent the error, the ALJ would have reached the same result.  *Id*.  Errors are not harmless if they impact the ALJ's decision.  *Id*.  Generally, an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Carmickle*, 533 F.3d at 1164.  Whether an error is harmless is determined by looking at the record as a whole to see whether the error altered the outcome of the case.  *Molina*, 674 F.3d at 1115.

Here, that the ALJ's errors were not harmless is clear from the ALJ's hypothetical question to the vocational expert.  The ALJ asked the expert whether a hypothetical individual of Christina A.'s age, education, and past work who "could perform light work, but never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could frequently handle, finger, and feel; and could perform simple, routine tasks with only occasional public contact" could perform work.  AR 66–67.  The VE testified that this individual could work as a hand packer, garment sorter, or cleaner. AR 67.  Next, the ALJ asked if that the same individual with the added limitation of restriction to sedentary work could work.  AR 68.  The VE testified that this individual could work as a sorter, weight tester, or table worker.  AR 68.

The ALJ then asked if the same individual, with the added limitation of inability to work for 20% of the day, could perform work.  AR 68.  The VE testified that no work is available for that hypothetical individual.  *Id*.  According to the opinions of Dr. Monks and

14

MFT Saint Clair and the testimony of Christina A. and Jessica A., Christina A. had the added limitation of inability to work for at least 20% of the day. *See* AR 25, 1185, 765. Had the ALJ credited these opinions, she would have made a finding of disability.

Therefore, the ALJ's errors in improperly weighing the medical opinion evidence and discounting Christina A.'s and Jessica A.'s testimonies were not harmless.

### F. The Court Remands for Calculation of Benefits

If the Court finds that the ALJ made a legal error and further finds that all essential factual issues have been resolved, it may remand the case for calculation of benefits. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1001 (9th Cir. 2014). Ninth Circuit precedent supports so doing when the record has been fully developed, the ALJ failed to supply legally sufficient reasons for rejecting a medical opinion or claimant's testimony, and the ALJ would have been required to find the claimant disabled by accepting that evidence as true. *Garrison*, 759 F.3d at 1014–15.

Here, the record includes extensive medical evidence, seven doctors' opinions, and the ALJ hearing with three witnesses. Moreover, the parties do not dispute the facts. *See* Dkt. No. 19 at 1. No further fact-finding is necessary; the record is fully developed. The ALJ failed to supply legally sufficient reasons for discounting the opinions of Dr. Monks and MFT Saint Clair and for discounting the testimony of Christina A. and Jessica A.. Finally, had the ALJ accepted either Christina A.'s or Jessica A.'s testimony or Dr. Monks's or MFT Saint Clair's opinions as true, the VE would have found that no jobs existed that were compatible with Christina A.'s limitations; thus, a finding of total disability would have been required.

### IV. CONCLUSION

The ALJ committed legal error and lacked substantial evidence to find that Christina A. was not disabled. The Court therefore GRANTS Christina A.'s motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. The Court REVERSES the decision of the ALJ and REMANDS for calculation of benefits beginning June 2, 2013.

**IT IS SO ORDERED.**

Dated: April 9, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge